KAREN P. HEWITT
United States Attorney
JEFFREY D. MOORE
Assistant U.S. Attorney
California State Bar No. 240595
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-7171
Email: Jeffrey.Moore@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO GUZMAN-SOSA (D1),<br>KATRINA CUELLAR (D2),<br><br>Defendant. | CRIMINAL CASE NO. 08cr1797 JM<br><br>Honorable Jeffrey T. Miller<br>Courtroom 16<br>Date: June 27, 2008<br>Time: 11:00 a.m.<br><br>UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS:<br><br>(1) TO COMPEL DISCOVERY AND<br>(2) PRESERVE EVIDENCE;<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES, AND THE UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY. |

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Jeffrey D. Moore, Assistant United States Attorney, and hereby files its Response to defendant's above-referenced motions and files its Motion for Reciprocal Discovery. This response is based upon the files and records of this case.

//

//

//

//

## I

## STATEMENT OF THE CASE

On June 3, 2008, a grand jury returned a two-count indictment charging Katrina Cuellar ("defendant") with Transportation of Illegal Aliens and aiding and abetting, in violation of Title 8 U.S.C. § 1324(a)(1)(A)(ii)(v)(II). On June 3, 2008, defendant was arraigned on the Indictment and entered a plea of not guilty.

## II

## STATEMENT OF FACTS

On or about May 15, 2008, Agents with the San Diego Sector North County Smuggling Interdiction Group ("SIG") were working in the Murrieta Border Patrol area.[1/] Around 11:15 am, Agent Valez was heading north on Interstate 15 near Fallbrook, California. At this time, Agent Valez noticed a suspicious car driving beside him. The driver of the 1999 Chrysler 300 was wearing a long sleeve dress shirt and the passenger was wearing a heavy coat with fur trim on the hood. Agent Valez thought this was odd, as temperatures were in the high 90's to low 100's. Agent Valez then noticed some black material dangling from the closed trunk of the car which resembled a shirt sleeve which he believed could have been clothing from a person hidden in the trunk. The car also matched the description of a car that was involved in an incident three days prior on May 12, 2008. During that incident, Agents watched through remote video surveillance as the car picked up a suspected illegal alien at the border fence in Otay Mesa, California. Agents tried to stop the car but it failed to yield. Agent Valez relayed all this information to other SIG Agents.

Agents Castillo and Mondragon responded to the area and decided to pull the car over. Agent Mondragon was driving a marked patrol car and activated his lights and siren. The car then immediately accelerated as it drove in the number 2 lane. The car then moved into lane 3 and continued north on the I-15 at an accelerated speed. After about three and a half miles, the car became caught in congested traffic and pulled over to the shoulder.

Agents Valez, Castillo, and Mondragon approached the car and identified themselves as Border Patrol Agents. The Agents then questioned all occupants as to their citizenship. The driver

---

[1/] Statement of Facts taken from the investigative reports relating to the instant case.

was identified as Sergio Guzman-Sosa (co-defendant). Co-defendant stated that he was a Mexican citizen, illegally present in the United States without proper documentation. Defendant was seated in the front passenger seat and there were two people in the backseat. Defendant said she was a United States citizen and both individuals in the backseat said that they were Mexican citizens, illegally present in the United States without proper documentation. At approximately 11:30 am, all occupants of the car were taken into custody and transported to the Murrieta Border Patrol Station for processing.

At the station, co-defendant was Mirandized by Agent Mondragon. Co-defendant waived his rights and admitted that he was in the United States illegally and that the car he was driving belonged to defendant. Co-defendant then stated that he has known defendant for about four months and stayed at a hotel with her the night before. Co-defendant also indicated that he met up with a friend of his, “Jose,” on the morning of the offense. “Jose” asked co-defendant to give two people a ride to Los Angeles and he agreed. Co-defendant did not know if he was going to be paid but said that “Jose” gave him $150 for gas. The two people then got into the car with co-defendant and defendant and they headed north. Co-defendant stated that “Jose” gave him directions to Los Angeles and that he was to return to San Diego after he had dropped the two people off. Co-defendant admitted that he knew the two people he was driving to Los Angeles were here illegally and that he was hoping to get paid for his trip. Co-defendant then stated that he was going to give his girlfriend, defendant, some of that money. When asked about the prior incident on May 12, 2008, co-defendant denied knowledge of that event.

Agent Mondragon then Mirandized defendant. Defendant waived her rights and agreed to make a statement. Defendant said that she spent the previous night at a hotel with her boyfriend, co-defendant. The next morning they met a friend of co-defendant’s, “Jose,” who asked them to give two people a ride to Los Angeles. Co-defendant agreed and the two people got into the car and they all headed north. Defendant said she knew the two people they were driving were in the United States illegally but she was not going to question them about their status. Defendant also said that she saw the marked sedan pull in behind them and thought it was the CHP. Defendant claimed that co-defendant did not pull over right away because they were listening to music and did not hear the

siren.

When defendant was questioned about the prior incident on May 12, 2008, she denied knowledge of it. However, after the interview was terminated and the tape recorder was stopped, defendant changed her story about the May 12 incident. Defendant stated that she was in her car with co-defendant near the border that day and that co-defendant was there to pick someone up. Someone then ran into her car and told co-defendant to go. Defendant then saw a Border Patrol Agent turn on his lights and come towards them. Co-defendant told defendant that he could not stop because he would go to jail for a long time. Defendant indicated that she did not want to say this on tape because she feared retaliation.

Both material witnesses were interviewed in connection with this case. Pedro Jiminez-Vasquez and Marco Antonio Aguilar-Paez both said they were Mexican citizens who illegally crossed into the United States on May 14, 2008 near San Ysidro. Both Jiminez-Vasquez and Aguilar-Paez made smuggling arrangements in Tijuana but were later abandoned by their original guide once they were in the United States. They then decided to travel on their own where they found a highway where they were picked up by a man named "Jose." Jiminez-Vasquez and Aguilar-Paez then made additional smuggling arrangements with "Jose" for $1000 to be taken to Los Angeles. "Jose" then took Jiminez-Vasquez and Aguilar-Paez to a hotel where they spent the night. Aguilar-Paez saw co-defendant and defendant at the hotel and saw "Jose" speak to co-defendant. Both Jiminez-Vasquez and Aguilar-Paez then got into the car. During their interviews, Jiminez-Vasquez and Aguilar-Paez were shown four photographs. Aguilar-Paez picked co-defendant out as the driver of the car and defendant out as the passenger. Jiminez-Vasquez picked defendant out as the passenger of the car as well.

## III

## <u>DEFENDANT'S DISCOVERY MOTIONS</u>

### A. Motion To Compel

To date, the Government has produced 118 pages of initial discovery to defendant. This discovery includes the reports of the arresting agents and defendant's criminal history rap sheets. In addition,3 audio CD's have been discovered to defendant.

The Government recognizes and acknowledges its obligation pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. The Government has complied and will continue to comply with its discovery obligations going forward. To date, the Government has received no reciprocal discovery.

As to exculpatory information, the United States is aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) and will comply. The United States will also produce any evidence of bias/motive, impeachment or criminal investigation of any of its witnesses of which it becomes aware. An inquiry pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) will also be conducted.

The United States will provide a list of witnesses in its trial memorandum. The grand jury transcript of any person who will testify at trial will also be produced.

The United States has provided information within its possession or control pertaining to the prior criminal history of defendant. If the Government intends to offer any evidence under Rule 404(b) of the Federal Rules of Evidence, it will provide notice promptly to defendant. The United States will produce any reports of experts that it intends to use in its case-in-chief at trial or such reports as may be material to the preparation of the defense.

In sum, the Government has already produced charging documents, investigative reports, an audio CD, prior deportation and conviction documents, and defendant's criminal history rap sheets. To the extent defendant requests specific documents or types of documents, the Government will continue to disclose any and all discovery required by the relevant discovery rules. Accordingly, the Government respectfully requests that no orders compelling specific discovery by the United States be made at this time.

**B. Motion To Preserve Evidence**

The Government has made every effort to preserve evidence it deems to be relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the defendant. See Illinois v. Fisher, 540 U.S.1174, 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt,

232 F.3d 1031, 1037-38 (9th Cir. 2000).

**IV**

**DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

**V**

**GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**A. All Evidence That Defendant Intends To Introduce In His Case-In-Chief**

Since the Government will honor defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), requests that defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of defendant and which defendant intends to introduce as evidence in her case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**B. Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendant)**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before

trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

**VI**

**<u>CONCLUSION</u>**

For the foregoing reasons, the Government respectfully requests that the Government's motion for reciprocal discovery be granted.

DATED: June 18, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ Jeffrey D. Moore
JEFFREY D. MOORE
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>SERGIO GUZMAN-SOSA (D1),<br>KATRINA CUELLAR (D2),<br>Defendant. | Criminal Case No. 08cr1794 JM<br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Jeffrey D. Moore, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Gary Edwards

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2008.

s/ Jeffrey D. Moore
JEFFREY D. MOORE