**ERICK L. GUZMAN**
California Bar No. 244391
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467
Erick_Guzman@fd.org

Attorneys for Mr. Guzman

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>**SERGIO GUZMAN-SOSA,**<br>Defendant. | Case No. 08CR1794-JM<br><br>DATE: June 27, 2008<br>TIME: 11:00 A.M.<br><br>NOTICE OF MOTIONS AND MOTIONS TO:<br><br>1) SUPPRESS EVIDENCE;<br>2) PRODUCE GRAND JURY TRANSCRIPTS;<br>3) SUPPRESS STATEMENTS;<br>4) PRESERVE AND INSPECT EVIDENCE;<br>5) COMPEL DISCOVERY; AND<br>6) GRANT LEAVE TO FILE FURTHER MOTIONS |

TO: KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
JEFFREY MOORE, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that, on June 27, 2008 at 11:00 a.m., or as soon thereafter as counsel may be heard, defendant, Sergio Guzma-Sosa, by and through his attorneys, Erick L. Guzman, and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following motions.

///

///

///

///

///

**MOTIONS**

Defendant, Sergio Guzman-Sosa, by and through his attorneys, Erick L. Guzman, and Federal Defenders of San Diego, Inc., asks this Court, pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules, for an order to:

1) Suppress Evidence;

2) Produce Grand Jury Transcripts;

3) Suppress Statements;

4) Preserve and Inspect Evidence;

5) Compel Discovery; and

6) Grant Leave to File Further Motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

Respectfully submitted,

DATED: June 20, 2008

*/s/ Erick L. Guzman*

**ERICK L. GUZMAN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Guzman
Erick_Guzman@fd.org

**ERICK L. GUZMAN**
California Bar No. 244391
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467
Erick_Guzman@fd.org

Attorneys for Mr. Guzman

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>**SERGIO GUZMAN-SOSA,**<br>Defendant. | ) | Case No. 08CR1794-JM<br><br>DATE: June 27, 2008<br>TIME: 11:00 A.M.<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS |

**I.**

**STATEMENT OF FACTS**[1]

On May 15, 2008, Border Patrol agents observed a vehicle driven by Mr. Guzman. See Report of Investigation at 2 (attached as Exhibit A). Agent Velez stated that Mr. Guzman was wearing a long sleeve dress shirt and that the front passenger was wearing sunglasses and a heavy coat with a fur trim hood. See id. Due to what Agent Velez claims was high temperature, her suspicions were aroused by the occupants' attire. See id. Agent Velez ran a check on the license plate and claims that there was no record of a recent change of registration, even though there was a change of registration sticker on the car. See id. Agent Velez noticed some cloth-like material extending out of the trunk of the car. Agents Mondragon and Castillo then stopped the vehicle. See id. There were no persons discovered in the trunk of the car. See id.

[1] Unless otherwise noted, these facts are based on discovery provided by the government. Mr. Guzman reserves the right to take a contrary position at a later juncture.

Initially, the government offered a plea-bargain to Mr. Guzman, which he rejected. At this point, on June 2, 2008, Mr. Guzman mailed and faxed a letter to the Assistant United States Attorney handling this case, drawing his attention to some of the exculpatory evidence that was contained in discovery provided by the government; Mr. Guzman requested that this information be presented to the Grand Jury when an indictment was sought. See Letter to Conover (Exhibit B). On June 3, 2008, the July 2007 Grand Jury indicted Mr. Guzman, to which he pled not guilty. On that same date, Judge Battaglia ordered preservation of evidence.

These motions follow.

## II.

## SUPPRESS EVIDENCE

Agent Mondragon seized Mr. Guzman without having reasonable suspicion or probable cause, in violation of the Fourth Amendment. All fruits of that illegal arrest must be suppressed. See Wong Sun v. United States, 371 U.S. 471 (1963).

### A. Mr. Guzman Has Standing

All occupants in a seized vehicle have standing to challenge the legality of the seizure. See Brendlin v. California, 551 U.S. ___ (2007), 127 S.Ct. 2400.

### B. The Seizure of the Vehicle Was Not Supported by Reasonable Suspicion

#### 1. Vehicle Stops Require Constitutional Scrutiny.

Terry v. Ohio, 392 U.S. 1 (1968), held that the Fourth Amendment allows officers armed with reasonable suspicion to temporarily detain someone. Yet the Terry Court itself recognized that even this lesser detention was still serious and was much more than an inconvenience. "It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." Id. at 10. Even a limited search is a "severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." Id.

Under Terry, someone can be temporarily detained if "an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others. Id. at 24. The Terry court defined the relevant question as "would the facts available

to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." Terry, 392 U.S. at 21.

Courts must look at the "totality of the circumstances" of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal citations omitted). However, "[r]easonable suspicion may not be based on broad profiles which case suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped." United States v. Sigmond-Ballesteros, 285 F.3d 1117, 1121 (9th Cir. 2002) (citing Arvizu, 534 U.S. at 273).

A vehicle stop must be supported by reasonable suspicion. Deleware v. Prouse, 440 U.S. 648, 653 (extending Terry stops to automobiles); see also Briogni-Ponce, 422 U.S. 873, 878 (1975) (applying Fourth Amendment protection to investigatory stops of vehicles).

In analyzing the legality of a vehicle stop, courts inquire if all the factors known to the detaining officer "taken together, they sufficed to form a particularized and objective basis for making the stop." Sigmond-Ballesteros, 285 F.3d at 1121. (internal citations omitted).

In Arvizu, officers relied on the following factors to perform a vehicle stop: there had been sensor alerts; the suspected vehicle appeared to be bypassing a checkpoint; the car was registered to an address "four blocks north of the border in an area notorious for alien and narcotics smuggling"; the knees of the children seemed to be raised; said children were waving mechanically, as if being ordered; the vehicle was not headed near a known camping sight; and the vehicle was of a van, which was known to be a favorite of alien smugglers. See Arvizu, 534 U.S. at 269-71. The Supreme Court upheld the stop and rejected the Ninth Circuit's "divide and conquer" jurisprudence. Id. at 267.

**2. Agent Mondragon Observed Nothing Indicating Illegal Activity**

Agent Mondragon did not observe anything that would supply her with a reasonable suspicion that criminal activity was afoot. From her report, it appears that agents were relying on three factors to justify their seizure of Mr. Guzman: 1) the occupants' attire considering the weather; 2) the change of registration sticker with no corroboration from their dispatch; 3) a similarity between this car and another vehicle that was suspected of "fail[ing] to yield;" and 4) there was black material hanging out from behind the car's truck, which Agent Velez mistakenly thought might have been a person's clothing. See Exhibit A at 2.

None of these facts--alone or in conjunction--are indicative of illegal activity. Furthermore, it appears that when Agent Velez ran the license plate, the results were negative for any warrants associated with the car. See Exhibit A at 2. Such a fact is consistent with innocent activity, and militates against the reasonableness of Agent Mondragon's suspicion. If Agent Mondragon only focused on what she argues is suspicious, and ignore those that point away from criminal activity, that is not really the totality of the circumstances.

## III.

## PRODUCE GRAND JURY TRANSCRIPT

Rule 6 permits disclosure of grand jury proceedings at the request of a defendant who shows that a ground may exist to dismiss the indictment. Fed.R.Crim.P. 6(e)(1)(E)(ii). The government was in possession of exculpatory evidence when it presented this case to the Grand Jury for indictment. Mr. Guzman highlighted that information and pleaded with the government to present it to the Grand Jury. See Exhibit B. Failing to provide this exculpatory evidence to the Grand Jury would be grounds for dismissal, thus Mr. Guzman has meet the burden of Rule 6(e).

## IV.

## THIS COURT MUST HOLD A VOLUNTARINESS HEARING TO DETERMINE THE ADMISSIBILITY OF ANY STATEMENTS ALLEGEDLY MADE BY MR. GUZMAN[2]

### A. The Government Must Demonstrate Compliance With *Miranda*.

Based on information provided by the government, it appears that Mr. Guzman was interrogated while he was in custody, and that he made statements to the agents as a result of this interrogation.

#### 1. *Miranda* Warnings Must Precede Custodial Interrogation.

The Supreme Court has held that the government may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant, unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody, or otherwise deprived of his freedom of action in any significant way.

Id; see also Orozco v. Texas, 394 U.S. 324, 327 (1969). A suspect is in custody if the actions of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably have led him to believe that he could not freely leave. See United States v. Lee, 699 F.2d 466, 468 (9th Cir. 1982); United States v. Bekowies, 432 F.2d 8, 12 (9th Cir. 1970).

Once a person is in custody, Miranda warnings must be given prior to any interrogation. See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the defendant of each of his or her "critical" rights. United States v. Bland, 908 F.2d 471, 474 (9th Cir. 1990), cert. denied, 506 U.S. 858 (1992). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. Miranda, 384 U.S. at 474. See also Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). In this case, Mr. Guzman was questioned after his arrest and before his Miranda rights were read to him. This questioning elicited incriminating responses regarding the charges now pending. These statements must be suppressed if the government cannot demonstrate that they complied with the requirements of Miranda.

**2. The Government Must Demonstrate That Any Alleged Waiver by Mr. Guzman After He Invoked His Rights Was Voluntary, Knowing, and Intelligent.**

When "interrogation continues without the presence of an attorney, and a statement is taken, a *heavy* burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda, 384 U.S. at 475 (emphasis added) (citation omitted). It is undisputed that any waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily in order to be effective. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). The standard of proof for a waiver of this constitutional right is high. Miranda, 384 U.S. at 475. See United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great; the court must indulge every reasonable presumption against waiver of fundamental constitutional rights) (emphasis added).

The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Edwards v. Arizona, 451 U.S. 477 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1938). See also Heldt, 745 F.2d at 1277; United States v. McCrary, 643 F.2d 323, 328-29 (5th Cir. 1981).

In Derrick v. Peterson, 924 F.2d 813 (9th Cir. 1990), cert. denied, 502 U.S. 853 (1991), the Ninth Circuit confirmed that the issue of the validity of a Miranda waiver requires a two prong analysis. The waiver must be both: (1) voluntary; and (2) knowing and intelligent. Id. at 820. The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry under the [Fifth] Amendment . . .." Id. However, the second prong, requiring that the waiver be "knowing and intelligent," mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 820-21 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)). This inquiry requires this Court to determine whether "the requisite level of comprehension" existed before the purported waiver may be upheld. Id. Thus, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Id. (quoting Spring, 479 U.S. at 573) (emphasis in original) (citations omitted).

Unless and until the government demonstrates Miranda warnings and a knowing and intelligent waiver, no evidence obtained as a result of the interrogation can be used against the defendant. Miranda, 384 U.S. at 479. In this case, the government has the burden of proving that an agent read Mr. Guzman his Miranda rights, and that Mr. Guzman intelligently and voluntarily waived those rights in all situations in which he reasonably believed that he was not free to leave. See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980).

**B. The Government Must Prove Mr. Guzman' Statements Were Voluntary.**

Even when the procedural safeguards of Miranda have been satisfied, assuming the government can meet its burden, a defendant in a criminal case is deprived of due process of law if the conviction is founded upon an involuntary confession. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964). The government bears the burden of proving not only that a confession was made, but also that the confession was voluntary by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 483 (1972).

In order to be voluntary, a statement must be the product of a rational intellect and free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne in a particular case, the totality of the circumstances must be considered. Schneckloth v. Bustamonte, 412

U.S. 218, 226 (1973). Some factors taken into account have included the youth of the accused, his lack of education, his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment, such as the deprivation of food or sleep. Id.

A confession is deemed involuntary not only if coerced by physical intimidation, but also if achieved through psychological pressure. "The test is whether the confession was 'extracted by any sort of threats or violence, (or) obtained by any direct or implied promises, however slight, (or) by the exertion of any improper influence.'" Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)). Accord United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

**C. Mr. Guzman Requests That This Court Conduct An Evidentiary Hearing.**

This Court must make a factual determination as to whether a confession was voluntarily given prior to its admission into evidence. 18 U.S.C. § 3501(a). Where a factual determination is required, courts are obligated by FED. R. CRIM. P. 12 to make factual findings. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" id. at 609-10 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading. Under section 3501(b), this Court must consider various enumerated factors in making the voluntariness determination, including whether the defendant understood the nature of the charges against him and whether he understood his rights. Without the presentation of evidence, this Court cannot adequately consider these statutorily mandated factors. Mr. Guzman accordingly requests that this Court conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence of the jury, whether any statements made by the defendant were voluntary.

## V.

## MOTION TO PRESERVE AND INSPECT EVIDENCE

Mr. Guzman renews the request for preservation of evidence that was originally made before Judge Battaglia. This includes any evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government (or its private contractors) in this case. See United States v. Riley, 189 F.3d 802, 806-08 (9th Cir.1999). This request includes, but is not limited to: (1) the defendant's personal

effects, specifically the clothes that Mr. Guzman and Ms. Cuellar were wearing at the time of arrest; (2) personal effects belonging to any of the material witnesses related to this case, including any papers and telephones; (3) the white Chrysler 300; (4) the materials discovered in the trunk of the vehicle; (5) any videotapes capturing Mr. Guzman or any third party in relation to this case, including footage taken by the California Highway Patrol; (6) any recorded communications made by government or non-government officials related to the above captioned case, e.g., 911 or dispatch tapes; and, (7) any other evidence seized from the defendant or any third party in relation to this case. This request also includes any material or percipient witnesses who might be deported or otherwise likely to become unavailable (e.g., undocumented aliens and transients). Mr. Guzman requests that government counsel be ordered to notify the agencies and private contractors with custody of such evidence be informed of the Court's preservation order. Further, Mr. Guzman requests an order granting defense counsel and/or their investigators access to the evidence for the purposes of investigation, including inspection, and photographing. FED. R. CRIM. P. 16(a)(1)(C). A proposed Order is attached for the convenience of the Court.

Mr. Guzman also requests preservation of any radio relays involving Border Patrol Agents, or other law enforcement agencies, regarding this arrest, or the previous incident mentioned at page 2 of Agent Mondragon's report. See Exhibit A at 2. He further requests preservation of any video records or written memorializations of his post arrest statements from May 15, 2008.

Mr. Guzman requests that the above materials be preserved throughout the pendency of the case, including any appeals.

## VI.

## MOTION TO COMPEL DISCOVERY[3]

Mr. Guzman requests all production of all relevant discovery pursuant to Federal Rule of Criminal Procedure 16 and Brady and its progeny, and any other relevant law. This includes material that may support any defense pre-trial motions. See United States v. Cedano-Arellano, 332 F.3d 568 (9th Cir. 2003) (Rule 16 applies to discovery material to defense pre-trial motions); United States v. Gamez-Orduno, 235 F.3d 453, 462 (9th Cir. 2000) (Brady applies to material supporting defense pre-trial motions).

---

[3] This requests pertains to all counts of the indictment.

Additionally, pursuant to Rule 12(b)(4)(B), Mr. Guzman requests all evidence to which Mr. Guzman would be untitled under Rule 16, so that he may timely properly negotiate his motions for the upcoming hearing in front of this Court.

Specifically, Mr. Guzman requests production of the <u>dispatch tapes</u> of the agents involved with Mr. Guzman's arrest, and any reports regarding the prior incident involving a similar car mentioned by Agent Mondragon in page 2 of her report. <u>See</u> Exhibit A at 2.

**VII.**

**<u>MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS</u>**

Defense counsel has received 118 pages of discovery, and has outstanding discovery requests. Also, Mr. Guzman is in the process of having the post-arrest interrogation translated into English. As additional discovery is produced and new information learned, Mr. Guzman requests leave to file new, or supplement his current, motions.

**VIII.**

**<u>CONCLUSION</u>**

For the foregoing reasons, Mr. Guzman respectfully requests that the Court grant the above motions.

Respectfully submitted,

DATED: June 20, 2008

*<u>/s/ Erick L. Guzman</u>*

ERICK L. GUZMAN
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Guzman
Erick_Guzman@fd.org

# INDEX OF EXHIBITS

United States v. Sergio Guzman-Sosa

Case No. 08cr1794-JM

Page

Report of Investigation (Exhibit A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Letter to AUSA Mark Conover (Exhibit B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# EXHIBIT A

U.S. Department of Homeland Security

# REPORT OF INVESTIGATION

| Title | File Number | Date |
|---|---|---|
| Prosecuted Alien Smuggling Case/Vehicle Seizure | Event No: [redacted] [redacted] | 05/15/2008 |
| | | Report Number |

| Special Agent: (Name) | (Signature) | Office |
|---|---|---|
| NOE MONDRAGON<br>SENIOR PATROL AGENT | | SDC/MUR |
| **Approved by:** (Name and Title) | (Signature) | Office |
| ARTURO VELEZ<br>SUPERVISORY BORDER PATROL AGENT | | SDC/MUR |

## SYNOPSIS
## ALIEN SMUGGLING CASE

**PRINCIPAL** ORGANIZATION Unknown

NAME Katrina Azelia CUELLAR A# [redacted] D/POB 09/14/1988 SAN DIEGO,CALIFORNIA, UNITED STATES

ALIAS RACE W SEX F HT 63 WT 142 EYES BRO HAIR BRO

ADDRESS (US) 811 THAYER DRIVE SPRING VALLEY, CALIFORNIA 91977 FOREIGN

IMM STAT U.S. Citizen SS# [redacted] FIN [redacted]

**PRINCIPAL**

NAME Sergio GUZMAN-SOSA A# [redacted] D/POB 09/08/1978 TOREON,COAHUILA, MEXICO

ALIAS RACE W SEX M HT 68 WT 145 EYES BRO HAIR BLK

ADDRESS (US) IN DHS CUSTODY FOREIGN [redacted] TIJUANA, BAJA CALIFORNIA, MEXICO

IMM STAT Inadmissable Alien SS# FIN [redacted]

[x] Continued on attached continuation page

**ALIENS**

NUMBER IN LOAD 2 NATIONALITY 2 MEXICO INTENDED DEST Los Angeles, California

CHARGE PER ALIEN Avg. $1,500.00 DATE/PLACE OF ENTRY 05/15/2008 Near San Ysidro, California

PLACE OF ARREST Interstate 15 N near California Oaks Exit in Murrieta, California

DATE OF ARREST 05/15/2008 1130 ARRESTING OFFICER ARTURO VELEZ

VEHICLE(S) USED 1999 CHRYSLER 300M WHI VINN: 2C3HE66G3XH578213 LIC# CA/6AVG135

TOTAL NUMBER OF PRINCIPALS/ASSOCIATES 2 DEPORTABLE/INADMISSABLE 1 NON-DEPORTABLE 1

TOTAL NUMBER OF CONVEYANCES SEIZED 1 ESTIMATED TOTAL VALUE $3,200.00

RECRUITING PROCEDURES-TRAVEL TO BORDER AREA-TO WHOM PAYMENT MADE-STAGING AREAS-MANNER OF ENTRY DROP HOUSES-HOW CHECKPOINTS AVOIDED-ROUTE TO POINT OF ARREST-CONTACTS AT DESTINATION

**U.S. Department of Homeland Security** — **Continuation Page for Form** G166F

| Alien's Name | File Number | Date |
|---|---|---|
| | [redacted] Event No: [redacted] | 05/15/2008 |

SMUGGLED ALIEN

NAME Pedro JIMENEZ-VAZQUEZ [redacted] D/POB [redacted] TAPACHULA,CHIAPAS, MEXICO

ALIAS ____ RACE W SEX M HT 64 WT 125 EYES BRO HAIR BRO

ADDRESS (US) IN DHS CUSTODY FOREIGN [redacted]NA

[redacted], MEXICO

IMM STAT Inadmissable Alien SS# ____ FIN [redacted]

SMUGGLED ALIEN

NAME Marco Antonio AGUILAR-PAEZ A# [redacted] D/POB [redacted] BAJA CALIFORNIA, MEXICO

ALIAS ____ RACE W SEX M HT 70 WT 145 EYES BRO HAIR BLK

ADDRESS (US) IN DHS CUSTODY FOREIGN [redacted]

[redacted]NIA, MEXICO

IMM STAT Inadmissable Alien SS# ____ FIN [redacted]

Narrative: Report of Investigation

-----------------------------------

On May 15, 2008 at approximately 11:15 am, San Diego Sector North County Smuggling Interdiction Group (SIG) Agents were working in the Murrieta Border Patrol area of operations. SIG Agents were performing their duties in unmarked Agency vehicles and in a plain clothes capacity. SIG Supervisory Border Patrol Agent A. Velez was traveling northbound on Interstate 15 near the Fallbrook, California area and noticed a suspicious vehicle driving beside him. The vehicle was identified as a white 1999 Chrysler 300 bearing California license plates of 6AVG135. SIG Agent Velez noticed that the driver of the vehicle was wearing a long sleeve dress shirt and the front passenger was wearing sunglasses and a heavy coat with a fur trim hood. Agent Velez thought that this was odd dress attire due to the current temperature being in the high 90's and lower 100's. Agent Velez then noticed that the vehicle had a change of registration sticker in the upper left hand corner of the rear window. He then ran a registration check through dispatch and was notified that the vehicle was registered out of Spring Valley, California to a Katrina Cuellar with no current change of registration on file through the Department of Motor Vehicles. Agent Velez then noticed black material dangling from the closed trunk of the vehicle that resembled a shirt sleeve. Agent Velez believed that this could have been clothing from a person concealed within the trunk. At this time, it dawned on Agent Velez that this vehicle matched the exact description of a prior Failure to Yield that was lost by the Imperial Beach Border Patrol Agents on Monday May 12, 2008. During that event Agents attempted a vehicle stop on the vehicle for suspicion of alien smuggling after observing the vehicle, through a remote video surveillance system, picking up a suspected illegal alien at the International Border Fence near Cactus Road in Otay Mesa, California. Agent Velez relayed this information and his observations to other SIG Agents.

SIG Agents P. Castillo and N. Mondragon responded to Agent Velez' location and assumed visual of the vehicle near the Winchester Exit in Temecula, California. Due to the stated observations, knowledge of the previous encounter with Border Patrol Agents and Agents extensive experience in interdicting alien smuggling vehicles Agents decided to perform a vehicle...(CONTINUED ON NEXT PAGE)

| Signature | Title |
|---|---|
| NOE MONDRAGON | SENIOR PATROL AGENT |

U.S. Department of Homeland Security

Continuation Page for Form G166F

| Alien's Name | File Number [redacted] Event No: [redacted] | Date 05/15/2008 |
|---|---|---|

stop on the vehicle, believing it was being utilized to smuggle illegal aliens. Agent Mondragon, driving a marked Agency vehicle, pulled in behind the vehicle and activated his lights and siren. The vehicle immediately accelerated as it traveled in lane number 2 on I-15 north. The vehicle then moved into lane three and continued north at an accelerated speed with the marked Agency vehicle in follow with the lights and siren still activated. The vehicle became caught in conjested traffic and eventually pulled over to the shoulder after approximately three and a half miles near the California Oaks Exit in Murrieta, California. Once at a complete stop SIG Agents Velez, Castillo and Mondragon approached the vehicle and identified themselves as Border Patrol Agents to the occupants. They then began questioning all the occupants of the vehicle as to their citizenship and immigration status to be in the United States. The driver, later identified as GUZMAN-Sosa, Sergio, stated that he was a citizen and national of Mexico. He further stated that he was illegally in the United States without immigration documentation to remain. The front passenger, later identified as CUELLAR, Katrina, stated that she was a United States citizen. The two occupants in the backseat individually stated that they were citizens and nationals of Mexico and that they crossed and were currently in the United States illegally without immigration documentation to remain. A search incident to arrest of the vehicles trunk revealed that there were several loose articles of clothing and several bags. The black material dangling from the closed trunk of the vehicle was determined to be an article of clothing. At this time, approximately 11:30 am, all of the occupants and the vehicle were taken into custody and transported to the Murrieta Border Patrol Station for further investigation.

At the station, each subject was individually enrolled into the various Department of Homeland Security databases to determine their true identity and possible criminal and immigration history. Record checks returned positive for all four individuals. The following was found on each individual:

GUZMAN-Sosa, Sergio: [redacted] (17 previous Border Patrol encounters/on one event admitting to unsuccessfully smuggling aliens/ on another event documented as being a foot-guide)

CUELLAR, Katrina: FB[redacted](assigned today) / FINS[redacted] (arrested for smuggling marijuana on a prior event)

JIMINEZ-Vasquez, Pedro: [redacted](prior Border Patrol encounters)

AGUILAR-Paez, Marco Antonio: [redacted]prior Border Patrol encounters)

With the above information found on each individual, Agents began interviewing each occupant under the presence of audio and video recording. The following are the synopsis of statements given by each occupant.

STATEMENT OF DRIVER/PRINCIPAL #1/GUZMAN-Sosa, Sergio:

On May 15, 2008 at approximately 2:26 p.m., the defendant, GUZMAN-Sosa, Sergio, provided Senior Patrol Agent N. Mondragon with a sworn videotaped statement in the Spanish language, witnessed by Senior Patrol Agent P. Castillo.

On May 15, 2008 at approximately 2:26 p.m., defendant GUZMAN-Sosa, Sergio was advised of his Miranda rights by Agent Mondragon in the Spanish language. GUZMAN stated that he understood his rights and was willing to answer questions without a lawyer present.

...(CONTINUED ON NEXT PAGE)

| Signature NOE MONDRAGON | Title SENIOR PATROL AGENT |
|---|---|

3 of 7 Pages

U.S. Department of Homeland Security

Continuation Page for Form G166F

| Alien's Name | File Number [redacted] Event No: [redacted] | Date 05/15/2008 |
|---|---|---|

GUZMAN stated that he was born in Torreon, Coahuila, Mexico on September 8, 1978. GUZMAN stated that his parents were both born in Mexico and have never had immigration documents. GUZMAN stated that he last crossed into the United States illegally somewhere through the hills near Tecate, California about five months ago. GUZMAN stated that he has been arrested by the Border Patrol about ten times. GUZMAN stated that he came to the United States to work and take care of his two daughters that live in Chula Vista, California. GUZMAN stated that he currently works for a shipping company on Miramar Road in San Diego, California.

GUZMAN stated that the vehicle he was arrested in today belongs to his girlfriend, CUELLAR, Katrina, whom he has known for about four months. GUZMAN stated that last night he stayed at a hotel with CUELLAR. GUZMAN stated that a friend, identified as "Jose", met up with him this morning and asked him to give two subjects a ride to Los Angeles, California. GUZMAN stated that he agreed but said he did not know if he was going to be paid. GUZMAN stated that his friend "Jose" gave him $150.00 for gas. GUZMAN stated that this morning the two subjects got into the car he was driving and they came north. GUZMAN stated that he stopped to buy food and pump gas in the vehicle before continuing northbound.

GUZMAN stated that "Jose" told him to take the Interstate 15 freeway, north. Then the 91 freeway, west. Then the 110 freeway, north. GUZMAN stated that "Jose" told him to exit two exits before Florence Avenue. GUZMAN stated that after dropping off the subjects he was going to return to San Diego, California.

GUZMAN stated that he knew the people he picked up were in the United States illegally. GUZMAN stated that he was hoping he was going to get paid for his trip and that he was going to give his girlfriend, CUELLAR, Katrina some of that money.

GUZMAN was confronted with information about the vehicle he was driving as being the same vehicle that was involved in another incident with the U.S. Border Patrol on May 12, 2008. GUZMAN stated that he had no knowledge of the vehicle being involved in a separate incident. GUZMAN stated that he was dropped off at home by his girlfriend around 9:00 a.m. and that s she kept possession of the vehicle the rest of the day.

Senior Patrol Agent Mondragon concluded the sworn statement at 3:12 p.m.

STATEMENT OF FRONT PASSENGER/PRINCIPAL #2/CUELLAR, Katrina:

On May 15, 2008 at approximately 1:21 p.m., the defendant, CUELLAR, Katrina, provided Senior Patrol Agent N. Mondragon with a sworn videotaped statement in the English language, witnessed by Senior Patrol Agent P. Castillo.

On May 15, 2008 at approximately 1:21 p.m., defendant CUELLAR was advised of her Miranda rights by Agent Mondragon in the English language. CUELLAR stated that she understood her rights and was willing to answer questions without a lawyer present.

CUELLAR stated that she was born in San Diego, California on September 14, 1988. CUELLAR stated that her parents were both born in San Diego, California. CUELLAR stated that she has been arrested one previous time coming across the border in San Ysidro, California in a vehicle that was reported stolen and that had approximately 100 lbs of marijuana. CUELLAR stated that she was in jail for about one month.

CUELLAR stated that last night she stayed at a hotel with her boyfriend, later identified, as...(CONTINUED ON NEXT PAGE)

| Signature | Title |
|---|---|
| NOE MONDRAGON | SENIOR PATROL AGENT |



Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security

Continuation Page for Form G166F

| Alien's Name | File Number [redacted]9 Event No: [redacted] | Date 05/15/2008 |
|---|---|---|

GUZMAN-Sosa, Sergio. CUELLAR stated that a friend of GUZMAN, only identified as "Jose", met with them this morning and asked them to give two subjects a ride to Los Angeles, California. CUELLAR stated that GUZMAN agreed. CUELLAR stated that this morning the two subjects got into her car that GUZMAN was driving and headed north. CUELLAR stated that GUZMAN stopped to buy food and pump gas in the vehicle before continuing northbound.

CUELLAR stated that she knew the people they picked up were in the United States illegally but she said she was not going to question them as to their status.

CUELLAR stated that she saw when the marked sedan got behind their vehicle. CUELLAR stated that she thought it was the California Highway Patrol stopping them. CUELLAR stated that GUZMAN did not pull over right away because they were listening to music and did not hear the siren.

CUELLAR was confronted with information about her vehicle being involved in another incident with the U.S. Border Patrol on May 12, 2008. CUELLAR stated that she had no knowledge of the vehicle being involved in a separate incident. CUELLAR stated that on that day her brother in law borrowed her vehicle at 4:30 a.m. to go look for a job and returned the car around 12:00 p.m. CUELLAR stated that she then went to her aunt?s house and stayed there the entire day.

Senior Patrol Agent Mondragon concluded the sworn statement at 2:00 p.m.

When Agent Castillo stopped the recorder CUELLAR changed her story about Monday, May 12, 2008. CUELLAR stated that she was with GUZMAN near the Mexico-U.S. border on that day in her car. CUELLAR stated that GUZMAN was there to pick-up somebody. CUELLAR stated that a person ran into her car and told GUZMAN to go. CUELLAR stated that she saw a Border Patrol Agent turn on his lights and come towards them. CUELLAR stated that GUZMAN said he could not stop because he would go to jail for a long time. CUELLAR stated that she did not want to say this on tape because she feared retaliation.

STATEMENT OF MATERIAL WITNESS #1/ JIMINEZ-Vasquez, Pedro:

On May 15, 2008 at approximately 3:24 pm, at the Murrieta Border Patrol in Murrieta, California, JIMENEZ-Vasquez, Pedro provided a taped sworn statement in the Spanish Language, which in summary depicts the following:

JIMENEZ stated that he is a citizen of Mexico. JIMENEZ stated that his mother who is now deceased was a citizen of Guatemala and that his father is a citizen of Mexico. JIMENEZ was born on April 4, 1965. JIMENEZ stated he lives in finca San Andreas Nejapa, Tapachula, Mexico. JIMENEZ stated that he crossed the international border on May 14, 2008. JIMENEZ admitted to crossing into the United States illegally near San Ysidro, California. JIMENEZ stated that he has no legal document to be or remain in the United States legally. JIMENEZ stated that he made the smuggling arrangements in Tijuana, Mexico. JIMENEZ stated he was to pay $2,000 Dollars USD. JIMENEZ stated that the original guide that crossed him illegally into the United States abandoned him and his friend, later identified as AGUILAR-Paez, Marco Antonio. JIMENEZ stated that he and AGUILAR then decided to attempt to travel on their own. JIMENEZ stated that he and AGUILAR then made it to a highway where they where picked up by a person they heard be called "Jose". JIMENEZ stated that he made an arrangement of approximately $1,000.00 US with the person he only knew as ?Jose? and that the arrangements were to take him to Los Angeles, California. JIMENEZ stated that his final destination was to be Las Vegas, Nevada.

...(CONTINUED ON NEXT PAGE)

| Signature | Title |
|---|---|
| NOE MONDRAGON | SENIOR PATROL AGENT |

5 of 7 Pages

U.S. Department of Homeland Security

Continuation Page for Form G166F

| Alien's Name | File Number [redacted] Event No. [redacted] | Date 05/15/2008 |
|---|---|---|

JIMENEZ stated he was taken by "Jose" to a hotel where he was given a change of clothes and food. JIMENEZ stated he stayed one night at the hotel. JIMENEZ stated that he and AGUILAR then got in the car this morning. JIMENEZ stated he sat in the passenger seat behind the driver.

JIMENEZ was shown four Polaroid photographs and identified Polaroid #4 as the female passenger of the Chrysler 300C. Polaroid #4 depicts the Co-defendant CUELLAR, Katrina.

The sworn statement concluded at approximately 3:39 P.M.

STATEMENT OF MATERIAL WITNESS #2/ AGUILAR-Paez, Marco Antonio:

On May 15, 2008 at approximately 3:47 pm, at the Murrieta Border Patrol in Murrieta, California, AGUILAR-Paez, Marco Antonio provided a taped sworn statement in the Spanish Language, which in summary depicts the following:

AGUILAR stated that he is a citizen of Mexico. AGUILAR stated that his parents are citizens of Mexico. AGUILAR was born on December 13, 1981. AGUILAR stated he lives in Tijuana, Baja California, Mexico. AGUILAR stated that he crossed the international border on May 14, 2008. AGUILAR admitted to crossing into the United States illegally near San Ysidro, California. AGUILAR stated that he has no legal documents to be or remain in the United States legally. AGUILAR stated that he made the smuggling arrangements in Tijuana, Mexico. AGUILAR stated that the original guide that crossed him illegally into the United States abandoned him and his friend, later identified as JIMENEZ-Vasquez, Pedro. AGUILAR stated that he and JIMENEZ then decided to attempt to travel on their own. AGUILAR stated that he and JIMENEZ then made it to a highway where they where picked up by a person they heard be called "Jose" who was the driver of a black Isuzu Rodeo. AGUILAR stated that he made arrangements with "Jose" of approximately $1,000.00 US to smuggle him North. AGUILAR stated that his final destination was to be Las Vegas, Nevada.

AGUILAR stated he was taken by "Jose" to a hotel where he was given a change of clothes and food. AGUILAR stated he stayed one night at the hotel. AGUILAR stated that he saw the persons later identified as GUZMAN-Sosa, Sergio and CUELLAR, Katrina at the hotel that "Jose" had taken them too. AGUILAR stated that he saw all three subjects talking and that later GUZMAN and CUELLAR stayed the night in the hotel. AGUILAR stated that he witnessed "Jose" and GUZMAN speak prior to him being placed into the vehicle by "Jose" this morning. AGUILAR stated he sat in the passenger seat behind the front passenger. AGUILAR stated that the driver later identified as GUZMAN said Hasta aqui llegamos and Ya valimos once he noticed the lights and siren. AGUILAR stated that he told GUZMAN to pull over. AGUILAR stated that he was told to duck down by GUZMAN.

AGUILAR was shown four Polaroid photographs and identified Polaroid #4 as the female passenger of the Chrysler 300C and Polaroid #2 as the male driver of the Chrysler 300C. Polaroid #4 depicts the Co-defendant CUELLAR, Katrina and Polaroid #2 depicts the Defendant GUZMAN-Sosa, Sergio

The sworn statement concluded at approximately 4:05 P.M.

INVESTIGATIVE RESULTS:

...(CONTINUED ON NEXT PAGE)

| Signature | Title |
|---|---|
| NOE MONDRAGON | SENIOR PATROL AGENT |



Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security

Continuation Page for Form G166F

| Alien's Name | File Number [redacted] Event No: [redacted] | Date 05/15/2008 |
| --- | --- | --- |

GUZMAN-Sosa, Sergio and CUELLAR, Katrina are being held in DHS custody to be prosecuted under Title 8 United States Code 1324 (alien smuggling). JIMINEZ-Vasquez, Pedro and AGUILAR-Paez, Marco Antonio are being held in DHS custody as Material Witnesses. The vehicle is being held in DHS custody for possible seizure under 8 USC 1324.

GUZMAN had a total of $748.00 US Currency in his possession. The money is being held in DHS custody for possible seizure under 8 USC 1324 due to the statements given and showing that the money was being used for the continuation of smuggling aliens. The money was placed in evidence bag numbered-A526385

CUELLAR had a total of $115.00 US Currency in her possession. The money is being held in DHS custody for possible seizure under 8 USC 1324 due to the statements given and showing that the money was being used for the continuation of smuggling aliens. The money was placed in evidence bag numbered-A526386

Four cellular phones were found within the vehicle. All four phones were held in DHS custody as evidence. All four phones were placed in evidence bags numbered-A526381 and A526388.

GUZMAN and CUELLAR were advised of their Lujan Castro rights by Agent Mondragon and was witnessed by Agent Castillo. GUZMAN did not invoke his right. CUELLAR stated that she did not really understand her right and would like to retain both rear seat occupants as they might have information favorable to her.

ARRESTING AGENTS
-----------------
LUIS R. LOPEZ
PAUL S. CASTILLO
NOE MONDRAGON

| Signature | Title |
| --- | --- |
| NOE MONDRAGON | SENIOR PATROL AGENT |



Form I-831 Continuation Page (Rev. 08/01/07)

# EXHIBIT B

FEDERAL DEFENDERS OF SAN DIEGO, INC.

The Federal Community Defender Organization for the Southern District of California

06/02/08

Mark Conover
Assistant United States Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893

SENT BY U.S. MAIL AND FACSIMILE AND

Re: ***U.S. v. Guzman-Sosa***, 08MJ1524-01-AJB

Dear Mr. Conover,

I understand that you are going to seek an indictment against Mr. Guzman-Sosa in the above case. There is exculpatory evidence that I urge you to produce to the Grand Jury Panel. This includes, but is not limited to: 1) Mr. Guzman-Sosa never states that he had knowledge of the material witnesses' immigration status prior to his arrest; 2) the material witnesses do not state that Mr. Guzman-Sosa knew their immigration status prior to their arrest; 3) he does not state that he was being paid for doing any illegal activity. Please present this along with all other exculpatory evidence you discover during your investigation to the grand Grand Jury.

If you have any questions, or if you believe that you do not have a duty to present exculpatory evidence to the Grand Jury, please contact me.

Respectfully,

Erick Guzman
Attorney for Mr. Guzman-Sosa

NBC Building
225 Broadway
Suite 900
San Diego,
California
92101-5030
**(619) 234-8467**
**FAX (619) 687-2666**

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy Chambers

Copy Assistant U.S. Attorney via ECF NEF

Copy Defendant

Dated: June 20, 2008

/s/ ERICK L. GUZMAN

Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467 (tel)
(619) 687-2666 (fax)
erick_guzman@fd.org (email)