KAREN P. HEWITT
United States Attorney
JEFFREY D. MOORE
Assistant United States Attorney
California State Bar No. 240595
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7171
Email: Jeffrey.Moore@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO GUZMAN-SOSA (D1),<br>KATRINA CUELLAR (D2),<br><br>Defendants. | Criminal Case 08cr1794-JM<br><br>Honorable Jeffrey T. Miller<br>Courtroom: 16<br>Date: July 3, 2008<br>Time: 11:00 a.m.<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:**<br><br>**1) SUPPRESS EVIDENCE OF VEHICLE STOP;**<br>**2) PRODUCE GRAND JURY TRANSCRIPTS;**<br>**3) SUPPRESS STATEMENTS;**<br>**4) PRESERVE AND INSPECT EVIDENCE;**<br>**5) COMPEL DISCOVERY; AND**<br>**6) GRANT LEAVE TO FILE FURTHER MOTIONS.**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES; AND THE UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY.** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, Jeffrey D. Moore, Assistant United States Attorney, and hereby files the attached memorandum of points and authorities in Response and Opposition to Defendant's above-referenced motions and files its Motion for Reciprocal Discovery. This response is based

upon the files and records of this case.

## I

## STATEMENT OF THE CASE

On June 3, 2008, a grand jury returned a two-count indictment charging Sergio Guzman-Sosa ("defendant") with Transportation of Illegal Aliens and aiding and abetting, in violation of Title 8 U.S.C. § 1324(a)(1)(A)(ii)(v)(II). On June 3, 2008, defendant was arraigned on the Indictment and entered a plea of not guilty.

## II

## STATEMENT OF FACTS

On or about May 15, 2008, Agents with the San Diego Sector North County Smuggling Interdiction Group ("SIG") were working in the Murrieta Border Patrol area.[1/] Around 11:15 am, Agent Valez was heading north on Interstate 15 near Fallbrook, California. At this time, Agent Valez noticed a suspicious car driving beside him. The driver of the 1999 Chrysler 300 was wearing a long sleeve dress shirt and the passenger was wearing a heavy coat with fur trim on the hood. Agent Valez thought this was odd, as temperatures were in the high 90's to low 100's. Agent Valez then noticed that the car had a change of registration sticker in the upper left hand corner of the back window. A registration check through dispatch indicated that the car was registered to Katrina Cuellar (co-defendant) out of Spring Valley, California, but no current change of registration was on file with the DMV. Agent Valez also noticed some black material dangling from the closed trunk of the car which resembled a shirt sleeve which he believed could have been clothing from a person hidden in the trunk. The car also matched the description of a car that was involved in an incident three days prior on May 12, 2008. During that incident, Agents watched through remote video surveillance as the car picked up a suspected illegal alien at the border fence in Otay Mesa, California. Agents tried to stop the car but it failed to yield. Agent Valez relayed all this information to other SIG Agents.

//

//

---

[1/] Statement of Facts relating to the instant case taken from the investigative reports.

Agents Castillo and Mondragon responded to the area. Based on the information they had received, knowledge of the previous encounter with the Border Patrol, and their experience in alien smuggling activities, Agents Mondragon and Castillo decided to pull the car over. Agent Mondragon was driving a marked patrol car and he activated his lights and siren. The suspicious car then immediately accelerated as it drove in the number 2 lane. The car then moved into lane 3 and continued north on the I-15 at an accelerated speed. After about three and a half miles, the car became caught in congested traffic and pulled over to the shoulder.

Agents Valez, Castillo, and Mondragon approached the car and identified themselves as Border Patrol Agents. The Agents then questioned all occupants as to their citizenship. The driver was identified as Sergio Guzman-Sosa (defendant). Defendant stated that he was a Mexican citizen, illegally present in the United States without proper documentation. In the front passenger seat was Katrina Cullear (co-defendant) and there were two people in the backseat. Co-defendant said she was a United States citizen and both individuals in the backseat said they were Mexican citizens, illegally present in the United States without proper documentation. At approximately 11:30 am, all occupants of the car were taken into custody and transported to the Murrieta Border Patrol Station for processing.

At the station, defendant was Mirandized by Agent Mondragon on May 15, 2008 at approximately 2:26 pm. Defendant said that he understood his rights, waived them, and agreed to make a statement. Defendant admitted that he was in the United States illegally and that the car he was driving belonged to co-defendant. Defendant then stated that he has known co-defendant for about four months and stayed at a hotel with her the night before. Defendant indicated that he met up with a friend of his, "Jose," on the morning of the offense. "Jose" asked defendant to give two people a ride to Los Angeles and he agreed. Defendant did not know if he was going to be paid but said that "Jose" gave him $150 for gas. The two people then got into the car with defendant and co-defendant and they headed north. Defendant stated that "Jose" gave him directions to Los Angeles and that he was to return to San Diego after he had dropped the two people off. Defendant admitted that he knew the two people he was driving to Los Angeles were here illegally and that he was hoping to get paid for his trip. Defendant then stated that he was going to give his girlfriend, co-defendant, some of that money. When asked about the prior incident on May 12, 2008, defendant denied knowledge of that event.

Agent Mondragon then Mirandized co-defendant. Co-defendant waived her rights and agreed to make a statement. Co-defendant said that she spent the previous night at a hotel with her boyfriend, defendant. The next morning they met a friend of defendant's, "Jose," who asked them to give two people a ride to Los Angeles. Defendant agreed and the two people got into the car and they all headed north. Co-defendant said she knew the two people they were driving were in the United States illegally but she was not going to question them about their status. Co-defendant also said that she saw the marked sedan pull in behind them and thought it was the CHP. Co-defendant claimed that defendant did not pull over right away because they were listening to music and did not hear the siren.

When co-defendant was questioned about the prior incident on May 12, 2008, she denied knowledge of it. However, after the interview was terminated and the tape recorder was stopped, co-defendant changed her story about the May 12 incident. Co-defendant stated that she was in her car with defendant near the border that day and that defendant was there to pick someone up. Someone then ran into her car and told defendant to go. Co-defendant then saw a Border Patrol Agent turn on his lights and come towards them. Defendant told co-defendant that he could not stop because he would go to jail for a long time. Co-defendant indicated that she did not want to say this on tape because she feared retaliation.

Both material witnesses were interviewed in connection with this case. Pedro Jiminez-Vasquez and Marco Antonio Aguilar-Paez both said they were Mexican citizens who illegally crossed into the United States on May 14, 2008 near San Ysidro. Both Jiminez-Vasquez and Aguilar-Paez made smuggling arrangements in Tijuana but were later abandoned by their original guide once they were in the United States. They then decided to travel on their own where they found a highway where they were picked up by a man named "Jose." Jiminez-Vasquez and Aguilar-Paez then made additional smuggling arrangements with "Jose" for $1000 to be taken to Los Angeles. "Jose" then took Jiminez-Vasquez and Aguilar-Paez to a hotel where they spent the night. Aguilar-Paez saw defendant and co-defendant at the hotel and saw "Jose" speak to defendant. Both Jiminez-Vasquez and Aguilar-Paez then got into the car. During their interviews, Jiminez-Vasquez and Aguilar-Paez were shown four photographs. Aguilar-Paez picked defendant out as the driver of the car and co-defendant out as the passenger. Jiminez-Vasquez picked co-defendant out as the passenger of the car as well.

## III

## POINTS AND AUTHORITIES

### A. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED AS THE STOP OF THE CAR WAS BASED ON REASONABLE SUSPICION AND THUS VALID.

Defendant has argued that Agent Mondragon's stop of defendant on May 15, 2008, was not based on reasonable suspicion or probable cause and thus, the fruits of that arrest must be suppressed. (Def. Mot. at 2-4). However, defendant's argument lacks merit and should be denied.

The Fourth Amendment protects individuals from unreasonable searches and seizures by the Government. While investigatory stops are permitted, the protections of the Fourth Amendment are extended to the investigatory stops. See Terry v. Ohio, 392 U.S. 1, 9 (1968). In order to have a valid investigatory stop, an officer must have a reasonable suspicion to believe that criminal activity is taking place. United States v. Sokolow, 490 U.S. 1, 7 (1989). Reasonable suspicion exists when an officer is aware of specific, articulable facts, which, together with objective and reasonable inferences, form a basis for suspecting that the particular person to be detained has committed or is about to commit a crime. See United States v. Salinas, 940 F.2d 392, 394 (9th Cir. 1991). Reasonable suspicion need not be inconsistent with innocence. "The relevant inquiry is not whether the particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of non-criminal acts." Sokolow, 490 U.S. at 10. In addition, an investigatory stop "may be justified on facts that do not amount to the probable cause required for an arrest." United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975).

In Sokolow, the United States Supreme Court held the reasonable suspicion analysis is "not readily, or even usefully, reduced into a neat set of legal rules" and like probable cause, takes into account the totality of the circumstances. See Sokolow, 490 U.S. at 7-8. During review, the court must interpret the facts present in light of the officer's training and experience to determine if reasonable suspicion is valid. See Sokolow, 490 U.S. at 8. The seminal case of Brignoni-Ponce, 422 U.S. 873 (1975) is illustrative. In Brignoni-Ponce, the United States Supreme Court recognized the valid public interest in controlling the illegal entry of aliens at the border by stating,

> Because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular

> vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion...The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.

Id. at 881-882. The United States Supreme Court rationalized that "a requirement of reasonable suspicion for stops allows the Government adequate means of guarding the public interest and also protects residents of the border areas from indiscriminate official interference." Id. at 883.

In addition to recognizing the public interest in controlling the illegal entry at the border and requiring reasonable suspicion for roving stops by the Border Patrol, the Brignoni-Ponce court held that any number of factors may be taken into account when deciding whether there is reasonable suspicion to stop a car in the border area. The Brignoni-Ponce Court further outlined a *non-exclusive list* of factors which Border Patrol agents might permissibly take into account in deciding whether reasonable suspicion exists to stop a car. These non-exclusive factors include: (1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the driver, including "obvious attempts to evade officers"; (6) appearance or behavior of the passengers; (7) model and appearance of the vehicle; and 8) officers' experience. Brignoni-Ponce, 422 U.S. at 884-85. Under the totality of the circumstances approach, courts should not evaluate reasonable suspicion factors "in isolation from each other...although each of the series of acts [may be] 'perhaps innocent in itself'...taken together, they [may] 'warrant further investigation.'" United States v. Arvizu, 534 U.S. 266, 274 (2002) (quoting Terry v. Ohio, 392 U.S. 1, 22 (1968)). In addition, the detaining officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Arvizu, 534 U.S. at 273.

In the instant case, Agent Valez first noticed that defendant and co-defendant were not dressed for the weather on the date of the offense. In addition, the car that defendant was driving had a change of registration sticker in the back window when in fact dispatch confirmed that no change of registration was on file at the DMV. Moreover, there appeared to be a shirt sleeve hanging out of the trunk of the car and Agent Valez believed that a person could have been concealed in the trunk. Beyond that, Agent Valez recalled that the car defendant was driving matched the exact description of a car that was

involved in an possible alien smuggling incident three days before. Finally, when Agent Mondragon pulled in behind the car defendant was driving and activated the lights and sirens, defendant accelerated, changed lanes, accelerated again, and finally came to a stop when he found himself caught in congested traffic. All the aforementioned factors, coupled with the experience of the Border Patrol Agents, suggested that alien smuggling may have been afoot. In addition, the information relayed to Agent Mondragon was not an anonymous tip, the information was provided by another Border Patrol Agent. Under the totality of the circumstances, the Agents had reasonable suspicion to perform a car stop as their observations were consistent with alien smuggling. In fact, the Agents would have been derelict in their duties had they not attempted to stop a car under these circumstances. Thus, defendant's motion to suppress evidence should be denied.

**B. DEFENDANT'S MOTION TO PRODUCE GRAND JURY TRANSCRIPTS SHOULD BE DENIED AS HE HAS NOT SHOWN THE REQUISITE NEED.**

Defendant seeks production of the grand jury transcripts arguing that the Government was in possession of exculpatory evidence when the case was presented to the grand jury. (Def. Mot. at 4). In support of his argument, defendant points to a letter sent to the Grand Jury Assistant U.S. Attorney where he "pleaded" with the Government to present it. (Def. Exh. B) (Def. Mot. at 4). However, defendant has failed to support his motion with a showing of the requisite need to invade the sanctity of the grand jury's deliberations. As such, his motion should be denied.

The need for grand jury secrecy remains paramount unless the defendant can show "a particularized need" that outweighs the policy of grand jury secrecy. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985). The grand jury may indict someone based on inadmissible evidence or evidence obtained in violation of the rights of the accused.[2/] Tracing the history of the grand jury from English common law, the U.S. Supreme

---

[2/] See, e.g., United States v. Mandujano, 425 U.S. 564 (1976) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); United States v. Calandra, 414 U.S. 338, 343 (1974); United States v. Blue, 384 U.S. 251 (1966) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); Lawn v. United States, 355 U.S. 339 (1958); Costello v. United States, 350 U.S. 359, 363 (1956) ("neither the Fifth (continued...)

Court has observed that grand jurors were not hampered by technical or evidentiary laws, and traditionally could return indictments based not on evidence presented to them at all, but on their own knowledge of the facts. See Costello, 350 U.S. at 363. In light of this tradition, the Court held that "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act," and that grand jury indictments could not be challenged based on the insufficiency or incompetence of the evidence. Id. Rather, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." Id. at 409.

In the instant case, there is no extraordinary basis to support defendant's request for grand jury transcripts. In fact, some of defendant's assertions are contrary to the evidence. For example, in defense counsel's letter he states that, "Mr. Guzman-Sosa never states that he had knowledge of the material witnesses' immigration status prior to his arrest." (Def. Exh. B). However, this is in direct contrast to defendant's own statement in the report of investigation where he states that he knew the people he had picked up were in the United States illegally. (Def. Exh. A at 4). In addition, in defense counsel's letter he argued that, "the material witnesses' do not state that Mr. Guzman-Sosa knew their immigration status prior to their arrest." (Def. Exh. B) However, the material witnesses' never make this statement in the report of investigation. (Def. Exh. A at 4). The report does not indicate one way or the other whether the material witnesses' knew this information. In fact, it does not appear from the report that they were even asked this question. (Def. Exh. A at 4). In essence, defense counsel is claiming that an omission in questioning, or speculation on the part of the material witnesses,' amounts to exculpatory evidence. In sum, defendant's arguments lack merit and his motion for production of grand jury transcripts should be denied.

---

[2/](...continued)
Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act"); see also Reyes v. United States, 417 F.2d 916, 919 (9th Cir. 1969); Johnson v. United States, 404 F.2d 1069 (9th Cir. 1968); Wood v. United States, 405 F.2d 423 (9th Cir. 1968); Huerta v. United States, 322 F.2d 1 (9th Cir. 1963).

**C. DEFENDANT'S MOTIONS TO SUPPRESS STATEMENTS SHOULD BE DENIED**

Defendant moves to suppress his post-arrest statements on the ground that they may have been obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). (Def. Mot. at 5). Moreover, defendant requests an evidentiary hearing to determine admissibility and to aid the Court in deciding his suppression motion. (Def. Mot. at 7). Defendant's argument contains three rather generic factual assertions. First, that defendant was arrested and questioned before being read his Miranda warnings (Def. Mot. at 5). Second, that defendant may not have knowingly and voluntarily waived his rights (Def. Mot. at 5-6). Third, that defendant's statement may not have been voluntary (Def. Mot. at 6). However, defendant's assertions are contradicted by the report of investigation that he has relied upon in filing his motions. (Def. Exh. A). As a result, defendant's motion to suppress statements should be denied without a hearing.

**1. Defendant Has Not Made an Adequate Showing for an Evidentiary Hearing**

Defendant has failed to present any facts that would warrant an evidentiary hearing, and this Court should deny the motion to suppress statements summarily.

(a) The Government Proffer Justifies a Summary Denial of Defendant's Motion

The Ninth Circuit has expressly stated that a Government proffer based on the statement of facts attached to the complaint is alone adequate to defeat a motion to suppress where the defense fails to adduce specific and material facts. United States v. Batiste, 868 F.2d 1089, 1092 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing") Since defendant in this case has failed to provide declarations alleging specific and material facts, the Court would be within its discretion to deny defendant's motion based solely on the complaint, without any further showing by the Government.

This Court requires litigants to follow Local Rule 47.1(g)(1), which mandates that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s)." The Rule further provides that "the Court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition." Moreover, the Ninth Circuit has held that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence because the

defendant did not properly submit a declaration pursuant to a local rule. United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991).

"An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000); see also United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (holding that evidentiary hearings on a motion to suppress are required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural as to whether contested issues of fact exist).

Moreover, a hearing is not required if the grounds for suppression consist solely of conclusory allegations of illegality. United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (holding that District Court Judge Gordon Thompson did not abuse his discretion in denying a request for an evidentiary hearing where the appellant's declaration and points and authorities submitted in support of motion to suppress indicated no contested issues of fact). Boilerplate motions concluding that the United States has the burden of proof to establish adequate warnings of constitutional rights are insufficient to establish that an evidentiary hearing is required. Howell, 231 F.3d at 623; see also Fed. R. Crim. P. 47 (requiring that a motion "shall state the grounds upon which it is made").

Here, defendant's boilerplate assertions do not demonstrate that there is a disputed factual issue requiring an evidentiary hearing. See Howell, 231 F.3d at 623. Consequently, this Court should deny the request for a hearing and summarily deny the motion to suppress statements.

(b) Regardless of the Hearing Determination, Defendant's Post-Miranda Confession Should Not Be Suppressed Because He Knowingly and Voluntarily Waived His Rights Without Official Coercion

If the Court chooses to hold an evidentiary hearing, defendant's motion to suppress statements should nevertheless be denied, since he made a knowing and voluntary waiver of his rights, free from coercion. (Def. Exh. A at 3-4). In addition, and contrary to defendant's assertion, defendant was Mirandized before he was interrogated in this case. (Def. Exh. A at 3).

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights and that the defendant waived those rights knowingly

and intelligently, and not as a result of improper coercion. Colorado v. Connelly, 479 U.S. 157, 167-70 (1986); United States v. Doe, 60 F.3d 544, 546 (9th Cir. 1995). "'Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant.'" United States v. Bautista-Avila, 6 F.3d 1360, 1365 (9th Cir. 1994) (quoting United States v. Bernard S., 795 F.2d 749, 751 (9th Cir. 1986)). Evidence that defendants understand their Miranda rights after such rights are explained is the preeminent factor in determining the validity of a waiver. See, e.g., Doe, 60 F.3d at 546 (waiver valid where defendant indicated he understood his rights and agreed to speak with officers); Bautista-Avila, 6 F.3d at 1366; United States v. George, 987 F.2d 1428, 1431 (9th Cir. 1993); Bernard S., 795 F.2d at 752.

To determine voluntariness, the Court must "consider the totality of the circumstances and determine whether 'the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne.'" United States v. Harrison, 34 F.3d 886, 890 (9th Cir. 1994) (citations omitted). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" Connelly, 479 U.S. at 167; cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted). Although it is possible for a defendant to be in such poor mental or physical condition that he or she cannot rationally waive their rights (and misconduct can be inferred based on police knowledge of such condition, Connelly, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational choice. United States v. Kelley, 953 F.2d 562, 564 (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise of rational choice).

**(i) Defendant's Waiver Was Knowing and Voluntary**

Here, the totality of the circumstances makes clear that on May 15, 2008, at around 2:26 pm, Agent Mondragon informed defendant of his Miranda rights in Spanish, shortly after he was taken into custody and in the presence of other Agents. (Def. Exh. A at 3-4). Defendant demonstrated that he

understood his rights by acknowledging them orally and agreeing to speak to Agents. (Def. Exh. A at 3-4). It was only after being apprised of his rights and acknowledging his understanding of those rights that defendant gave a confession. (Def. Exh. A at 3-4). As the Miranda court made clear, "Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." Miranda, 384 U.S. at 478.

There is no indication that defendant indicated that he did not want to speak to Agents or that he was in any way pressured to speak to them. Thus, this Court should not suppress defendant's post-arrest statements.

## D. DEFENDANT'S DISCOVERY MOTIONS

### 1. Motion To Compel

To date, the Government has produced 118 pages of initial discovery to defendant. This discovery includes the reports of the arresting Agents and defendant's criminal history rap sheets. In addition, 3 audio CD's have been discovered to defendant.

The Government recognizes and acknowledges its obligation pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. The Government has complied and will continue to comply with its discovery obligations going forward. To date, the Government has received no reciprocal discovery.

As to exculpatory information, the United States is aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) and will comply. The United States will also produce any evidence of bias/motive, impeachment or criminal investigation of any of its witnesses of which it becomes aware. An inquiry pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) will also be conducted.

The United States will provide a list of witnesses in its trial memorandum. The grand jury transcript of any person who will testify at trial will also be produced.

The United States has provided information within its possession or control pertaining to the prior criminal history of defendant. If the Government intends to offer any evidence under Rule 404(b) of the Federal Rules of Evidence, it will provide notice promptly to defendant. The

United States will produce any reports of experts that it intends to use in its case-in-chief at trial or such reports as may be material to the preparation of the defense.

In sum, the Government has already produced charging documents, investigative reports, an audio CD's, and defendant's criminal history rap sheets. To the extent defendant requests specific documents or types of documents, the Government will continue to disclose any and all discovery required by the relevant discovery rules. Accordingly, the Government respectfully requests that no orders compelling specific discovery by the United States be made at this time.

**2. Motion To Preserve Evidence**

The Government has made every effort to preserve evidence it deems to be relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the defendant. See Illinois v. Fisher, 540 U.S.1174, 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**D. DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

**E. GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**1. All Evidence That Defendant Intends To Introduce In His Case-In-Chief**

Since the Government will honor defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), requests that defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of defendant and which defendant intends to introduce as evidence in her case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of defendant, which he intends to

introduce as evidence-in-chief at the trial, or which were prepared by a witness whom defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**2. Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendant)**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

## IV

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that defendant's motions be denied except where not opposed, and that the Court grand the United States' motion for reciprocal discovery.

DATED: June 26, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

S/ Jeff Moore
JEFFREY D. MOORE
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Jeffrey.Moore@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr1794 JM |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| v. | ) | |
| | ) | |
| SERGIO GUZMAN-SOSA (D1), | ) | |
| KATRINA CUELLAR (D2), | ) | |
| Defendants. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, JEFFREY D. MOORE, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:**

**1) SUPPRESS EVIDENCE OF VEHICLE STOP;**

**2) PRODUCE GRAND JURY TRANSCRIPTS;**

**3) SUPPRESS STATEMENTS ;**

**4) PRESERVE AND INSPECT EVIDENCE;**

**5) COMPEL DISCOVERY; AND**

**6) GRANT LEAVE TO FILE FURTHER MOTIONS; ALONG WITH**

**the United States' motion for reciprocal discovery.**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Erick Guzman, Esq. Eric_Guzman@fd.org

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2008 s/ Jeff Moore

JEFFREY D. MOORE